UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RITA M. WEBSTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 07-CV-681-SAJ |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**[1]

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying Disability Insurance benefits under Title II of the Social Security Act. Plaintiff asserts that (1) the ALJ failed to properly consider medical opinions offered in her case and (2) the ALJ failed to properly assess Plaintiff's residual functional capacity ("RFC"). For the reasons set forth below, the Court reverses and remands the Commissioner's decision for further proceedings consistent with this opinion.

**1. FACTUAL AND PROCEDURAL HISTORY**

Plaintiff, Rita M. Webster, was born on May 28, 1947 and was 60 at the time of the second ALJ hearing. [R. 318]. She has a college degree. [R. 62]. Her past relevant work was as a social worker with the State Department of Human Services. [R. 57]. She alleges that she has been disabled since August 20, 2001. [R. 45]. She was last insured for disability insurance benefits through December 31, 2006. [R. 53].

---

[1] This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

1

Plaintiff alleges she is unable to work due to physical and mental impairments, including fibromyalgia, irritable bowel syndrome and depression. Plaintiff was diagnosed with fibromyalgia in 1990. [R. 101-02]. She experienced severe fatigue and pain in all joints, which are symptoms characteristic of fibromyalgia. [R. 127, 202, 209].

Plaintiff received treatment from the Veterans' Administration ("VA") clinic for her various impairments, including depression. She was prescribed anti-depressant medication, and saw a counselor, Janet Gearin, at the VA clinic. In response to Plaintiff's concerns of difficulties with her memory, Ms. Gearin administered the Wechsler Memory Scales-III on January 22, 2002. Plaintiff's results on that test were assessed as being within normal limits, with no evidence of cerebral dysfunction. However, Ms. Gearin noted that Plaintiff's "subjective complaints of forgetfulness and poor memory are due to the presence of fatigue and mood disturbance" and recommended Plaintiff continue psychiatric care for depression. [R. 122-23].

At the Commissioner's request, Dr. Minor Gordon performed a consultative examination on October 1, 2003. Dr. Gordon noted Plaintiff demonstrated a depressed mood, and symptoms of disturbed sleep, poor appetite and low energy. Dr. Gordon administered the Minnesota Multiphasic Personality Inventory ("MMPI"), on which Plaintiff achieved a protocol showing her to be preoccupied with her medical conditions. Dr. Gordon interpreted Plaintiff's MMPI results to evidence a "mild to moderate level of depression," social isolation and withdrawal. He noted Plaintiff was "inclined to overstate her problems and to react hysterically to environmental events," and characterized her MMPI profile as "a depressed female [whose] depression likely comes from failing hysteroid coping mechanisms." Dr. Gordon also concluded that Plaintiff "likely would have difficulty

2

communicating comfortably in a social circumstance secondary to chronic pain." [R. 213-18]. Dr. Gordon completed a "Mental Medical Source Statement," in which he found Plaintiff had "no limitation" or "no significant limitation" in nearly all mental activities listed on that form; however, Dr. Gordon indicated Plaintiff had "moderate" limitations in her ability to maintain attention and concentration for extended periods. [R. 219-20].

## 2. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims. *See* 20 C.F.R. §§ 404.1520, 416.920. Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . .

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

42 U.S.C. § 423(d)(2)(A).[2]

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510, 416.910 and 404.1572, 416.972). Step Two requires that the claimant demonstrate that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that her impairment or the combination of impairments prevents her from performing her past relevant work. A claimant is not disabled if the claimant can perform her past work. If a claimant is unable to perform her previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of her age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*. *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will "neither reweigh the evidence nor substitute its judgment for that of the Commissioner." *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000); *see Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

"The finding of the Secretary[3] as to any fact, if supported by substantial evidence, shall be conclusive, . . ." 42 U.S.C. § 405(g). Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750. In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance. *Perales*, 402 U.S. at 401. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams*, 844 F.2d at 750.

---

benefits are denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

[3] Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L No. 103-296. For the purposes of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner".

This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

### 3. ADMINISTRATIVE LAW JUDGE'S DECISION

In his decision, the ALJ determined that (1) Plaintiff met the insured status requirements of the Social Security Act through December 31, 2006; (2) Plaintiff had not engaged in substantial gainful activity at any time between her alleged onset date of August 20, 2001 and her date last insured of December 31, 2006; (3) Plaintiff's impairments, which consisted of fibromyalgia, status post left thumb release and status post left wrist compartment release were "severe"; (4) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (5) Plaintiff had the residual functional capacity for sedentary work; and (6) Plaintiff was capable of performing her past relevant work as a social worker, which did not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. [R. 311-18]. Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined by the Social Security Act, at any time from August 20, 2001, through December 31, 2006, the date she was last insured for Title II disability benefits. *Id.*

### 4. REVIEW

Although Plaintiff raises two arguments in her brief, her second contention is dependent on the merits of her first contention. If Plaintiff is correct in contending that the ALJ erred in failing to assess Dr. Minor Gordon's opinions and examination findings about

Plaintiff's depression, then Plaintiff is also correct in her second contention, that the ALJ erred in finding Plaintiff's depression was not a "severe" impairment at Step Two and in failing to assess any limitations from that mental impairment in his residual functional capacity ("RFC") assessment.  A discussion of Dr. Gordon's opinions and examination, and the procedural history of this case, is necessary as background, before evaluating the parties' arguments.

Dr. Gordon found Plaintiff's MMPI results "support[ed] a mild to moderate level of depression secondary to failing hysteroid coping mechanism." Dr. Gordon concluded Plaintiff "likely would have difficulty communicating comfortably in a social circumstance secondary to chronic pain."  He diagnosed Plaintiff with "adjustment disorder with depressed mood, mild to moderate, secondary to her general medical condition" and a "chronic pain syndrome." [R. 218].  In completing a "Mental Medical Source Statement" form, Dr. Gordon found Plaintiff to have either no limitations, or no significant limitations in most mental activities, but he indicated she had "moderate" limitations in the ability to maintain attention and concentration for extended periods. [R. 220].

In the first ALJ's decision, issued on January 6, 2004, ALJ Denzil Busick found Plaintiff's depression was a "severe" impairment at Step Two, but it did not meet the criteria for depression required in Listing 12.04. [R. 17-18].  ALJ Busick discussed at length Dr. Gordon's examination findings, including Dr. Gordon's conclusion of Plaintiff's difficulty with communicating in a social circumstances due to chronic pain, and his "moderate" limitations in Plaintiff's ability to maintain attention and concentration for extended periods. [R. 16-17]. At Step Four, ALJ Busick specifically found that Plaintiff could not return to her past work as a social worker because of her "moderate limitation in concentration and pace." [R. 19].

6

ALJ Busick then found Plaintiff was not disabled at Step Five of the sequential evaluation process, because she had transferable skills to two sedentary, semi-skilled jobs in the national economy. [R. 21].

After the Appeals Council denied Plaintiff's request for review of ALJ Busick's decision, Plaintiff appealed that decision to this Court, which affirmed it. The Tenth Circuit reversed ALJ Busick's decision, finding that the ALJ had not made the necessary factual findings pertaining to the similarity of transferable skills for a claimant of advanced age. The Tenth Circuit pointed out that Plaintiff's age of 59 at the time of her first hearing, placed her in the "advanced age" category, for which the Commissioner's regulations specify there should be "very little, if any, vocational adjustment" required for a person to perform other jobs at Step Five. The Tenth Circuit remanded in order to determine whether, given Plaintiff's advanced age, any "vocational adjustment" would be required for her to be able to perform the two semi-skilled jobs the vocational expert named. [R. 396-404]. *See, Webster v. Barnhart*, 2006 WL 1806609 (10th Cir. July 3, 2006).

On remand from the Tenth Circuit, ALJ Lantz McClain held a hearing on April 23, 2007. He issued his decision on July 30, 2007, concluding that Plaintiff was not disabled at Step Four, because she could return to her past work as a social worker. [R. 317]. Intrinsic to the ALJ's Step Four decision, however, was his finding at Step Two that Plaintiff's depression was not a "severe" impairment, and the ALJ did not include any limitations pertaining to that mental impairment in his RFC assessment. [R. 313-14]. In particular, the ALJ did not discuss Dr. Gordon's opinions and findings, except to note a diagnosis of a "mild adjustment disorder." [R. 314]. The ALJ concluded at Step Two that, "[b]ased on the totality of the evidence," Plaintiff's "alleged depression and/or anxiety is mild

7

and situational, and would have only a minimal affect on her ability to perform work-related activities." The ALJ then found Plaintiff to have only "mild" limitations in the first three areas of mental-related work functioning. [R. 314]. Plaintiff's allegations of error focus on these findings in the second ALJ's decision.

Plaintiff argues that the Commissioner's own regulations and Ruling 96-5p require the ALJ to consider and address Dr. Gordon's opinions on Plaintiff's limitations from her depression. The Commissioner's regulation states, "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. §404.1527(d). Ruling 96-5p provides that the ALJ "must always carefully consider medical source opinions about any issue" and "[o]pinions from any medical source about issues reserved to the Commissioner must never be ignored." *Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner*, SSR 96-5p, 1996 WL 374183 at *2-3 (S.S.A, July 3, 1996). Review of the second ALJ's decision shows that he did not evaluate Dr. Gordon's opinions about Plaintiff's limitations from her depression or "adjustment disorder" in making his Step Two finding of a non-severe mental impairment.[4]

The Commissioner argues that the regulations permit the ALJ to rely more on Plaintiff's treating physicians at the VA clinic, over the one-time examination findings of a consultative examiner such as Dr. Gordon. Def.'s Resp. Br. at 3. While the Commissioner's regulations require the ALJ to weigh medical source opinions according

---

[4]See also, *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir 2004)("An ALJ must evaluate every medical opinion in the record."); *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) ("because we cannot meaningfully review the ALJ's determination" when he "failed to articulate the weight, if any" he gave to the medical source opinion and "failed also to explain the reasons for assigning that weight or for rejecting the opinion altogether," remand of the ALJ's decision was necessary).

to the nature of the treatment relationship, see 20 C.F.R. § 404.1527(d),  the ALJ did not weigh the VA treatment records against Dr. Gordon's assessment in his decision, and he did not cite that regulation as his motive for giving scant consideration to Dr. Gordon's report.  Thus, the Commissioner's argument is a "post-hoc justification".  See, *Haga v. Astrue*, 482 F.3d 1205,1207 (10th Cir. 2007)( the court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself").

Contrary to his first argument that the ALJ gave greater weight to Plaintiff's treating sources at the VA, the Commissioner also contends that, if the ALJ committed any errors in evaluating Dr. Gordon's opinions and findings, those errors are harmless, "because neither Dr. Gordon's report nor the medical evidence from Plaintiff's treating mental health providers supports a finding that Plaintiff had a severe mental impairment." Def.'s Resp. Br. at 3. The Commissioner cites the Tenth Circuit's decision in *Fischer-Ross v. Barnhart*, 431 F.3d 729 (10th Cir 2005) as finding the doctrine of "harmless" error to be applicable "when the court can confidently say that no reasonable administrative fact finder, following the correct analysis, could have resolved the factual matter in any other way."  *Id*. at 734-35. In this case, however, the Court need look no further than the first ALJ's decision, which found Plaintiff's depression to be "severe" at Step Two, and specifically noted limitations from Dr. Gordon's report in support of that finding. [R. 15-17]. Neither the Commissioner, nor the second ALJ provide any rationale for why the first ALJ's finding of depression as a "severe" impairment should be not viewed as that of a "reasonable" administrative fact finder.

In his response brief, the Commissioner argues several reasons why Dr. Gordon's

report and opinions should not be entitled to any weight, because of purported conflicts with other evidence in the record. However, the ALJ did not cite these reasons in his decision for not giving any weight to Dr. Gordon's opinion. The Commissioner argues that objective testing of Plaintiff's cognitive functioning and memory at the VA clinic was "evidence of good functioning" that conflicted with Dr. Gordon's finding of "moderate" limitations in her ability to maintain attention and concentration for extended periods. Def.'s Resp. Br. at 4. However, the VA examiner recommended continuing psychiatric care for Plaintiff's depression, and concluded that "it was likely her subjective complaints of forgetfulness and poor concentration are due to the presence of fatigue and mood disturbance." [R. 122-23]. The Commissioner also argues that Dr. Gordon's attribution of symptoms to a chronic pain syndrome, and placement of that impairment on the diagnostic Axis III, indicates that this syndrome is a physical, rather than mental impairment. Def.'s Resp. Br. at 5.  Since the ALJ did not address either Dr. Gordon's diagnosis of chronic pain syndrome in his decision, or his conclusion that Plaintiff would have difficulty "communicating comfortably in a social circumstance," the Commissioner's argument is a "post-hoc effort to salvage the ALJ's decision."  *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004).

To the extent that the ALJ considered and cited evidence of Plaintiff's mental impairment from the record in his decision, he cited only that which tended to prove his characterization of her depression as "situational" and reactive to events and conditions affecting her family. The Commissioner's regulations, however, acknowledge that, for a claimant with a mental impairment, her "level of functioning may vary considerably over time" and at various times may "seem relatively adequate, or conversely, rather poor." The Commissioner advises that, for a proper evaluation of mental impairments, the ALJ "must

take into account any variations in the level of your functioning in arriving at a determination of severity over time." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(2). In Plaintiff's case, however, the majority of records the ALJ cited as support for finding her depression to be non-severe are before the date when she alleged she stopped working and became disabled. The ALJ failed to explain why he found these records to be significant, over the later VA records which tended to demonstrate Plaintiff's increasing depression, as her fibromyalgia pain increased.

The ALJ erred in failing to address Dr. Gordon's opinions about Plaintiff's limitations in determining at Step Two that she did not have a "severe" mental impairment. The ALJ is obligated to include limitations from non-severe limitations in his RFC assessment, 20 C.F.R. § 404.1545(a)(2), but the ALJ did not include Dr. Gordon's opinions in his RFC assessment. At Step Four, Dr. Gordon's limitations were not presented to the vocational expert, nor was any information about the job duties and mental demands of Plaintiff's past work as a social worker elicited from the vocational expert. The ALJ could thus not make the factual findings required at Step Four, by comparing his flawed RFC assessment with the unknown job duties and demands of a social worker job, to support his ultimate conclusion that Plaintiff could return to that job and was not disabled. The ALJ's errors at Step Two infected his denial of benefits at Step Four, requiring that his decision be reversed.

Plaintiff requests that this Court remand for payment of benefits, instead of a third administrative hearing of her claim. On the issue of whether to remand for benefits, or for further administrative proceedings, the Tenth Circuit has stated that some of "the relevant factors we consider are the length of time the matter has been pending, . . . and whether

11

or not 'given the available evidence, remand for additional fact-finding would serve any useful purpose but would merely delay the receipt of benefits.'" *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).  Here, Plaintiff applied for disability insurance benefits more than six years ago.  Her claim for benefits now has been reviewed by this Court twice, and once by the Tenth Circuit.

While these factors weigh in favor of remanding for payment of benefits, the Court cannot conclude that Plaintiff's case does not require additional fact-finding.[5] Because the second ALJ did not reach Step Five to make the factual findings on Plaintiff's transferable skills and what vocational adjustment, if any, would be required because of her advanced age, a third administrative proceeding appears necessary in order for such evidence to be adduced from the vocational expert, consistent with the Tenth Circuit's recommendations in its remand order.  On remand, the ALJ should consider the Commissioner's instructions in SSR 82-41, that "[a]ll functional limitations included in the RFC (exertional and nonexertional) must be considered in determining transferability" and that "mental limitations may prevent a claimant from performing semiskilled or skilled work activities essential to a job."  *Program Policy Statement Titles II and XVI: Work Skills and Their Transferability as Intended by the Expanded Vocational Factors Regulations Effective February 26, 1979*, SSR 82-41, 1982 WL 31389 at *5 (S.S.A. November 30, 1982).  As the Tenth Circuit recognized, the "more stringent burden" to produce evidence of transferable

---

[5]Whether Plaintiff has transferable skills may be determinative of disability under the Medical-Vocational Guidelines, if she is limited to sedentary work.  With her age at the time of her alleged onset (56 years old), her level of education, and no transferable skills, Plaintiff may be found "disabled" under Rule 201.06.  Conversely, a finding that she has transferable skills, with the same age and education would dictate a finding that she is "not disabled" under Rule 201.07.

12

skills, and jobs using those skills "with little or no vocational training or job orientation," *Nielsen v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993), should be placed on the Commissioner at Step Five. *Webster*, 2006 WL 1806609 (10th Cir. July 3, 2006).

Accordingly, the Court remands this case for a third administrative proceeding to the Commissioner, consistent with the issues contained herein.

IT IS SO ORDERED this 1st day of December, 2008.

Sam A. Joyner
United States Magistrate Judge